# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 9451 | **DATE** | 2/18/2003 |
| **CASE TITLE** | STATHOPOULOS vs. BOSTROM | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The bankruptcy court's November 27, 2002 order entering judgment in favor of plaintiffs George and Gabrielle Stathopoulos and against debtors Garth and Becky Bostrom is affirmed. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | FEB 20 2003 | 14 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | *bankruptcy* | |
| ✓ | Copy to judge/magistrate judge. | FEB 2003 | |
| | | 2/18/2003 | |
| | | date mailed notice | |
| CB | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | PW mailing deputy initials |

GEORGE AND GABRIELLE )
STATHOPOULOS, )
                ) No. 02 C 9451
           Plaintiffs, )
                ) Suzanne B. Conlon, Judge
    v. )
                )
GARTH BOSTROM AND BECKY BOSTROM )
a/k/a BECKY DAHLGREN, )
                )
           Defendants. )

**DOCKETED**

FEB 2 0 2003

## MEMORANDUM OPINION AND ORDER

Garth and Becky Bostrom (collectively, "debtors") filed for bankruptcy and sought to discharge a debt owed to George and Gabrielle Stathopoulos (collectively, "creditors"). Creditors filed an adversary proceeding against debtors objecting to the discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A) (Count I) and 727(a)(5) (Count II). After an evidentiary hearing, the bankruptcy court granted judgment in creditors' favor. Debtors appeal.

## BACKGROUND

The following facts are undisputed. On June 20, 1998, debtors executed a promissory note in the amount of $133,355.29 in creditors' favor. Along with the promissory note, debtors granted creditors a junior mortgage on their home. Debtors defaulted on the note. Creditors filed a mortgage foreclosure action against debtors in state court. Judgment of foreclosure and sale was entered in the amount of $135,081.00. Prior to the sale, debtors filed for bankruptcy. Debtors scheduled creditors' claim as secured by a second mortgage in the amount of $144,868.95.

## I.   Debtors' Original Filing

On February 9, 2001, debtors filed for Chapter 7 bankruptcy. Debtors' original filing consisted of a petition, schedules and statement of financial affairs dated November 9, 2000.

1

14

Debtors first met with their attorney on October 30, 2000. Becky is a practicing attorney and Garth works as a consultant. Debtors provided counsel with their financial information, including Garth's most recent pay stub, tax returns, credit card debt, status of the pending mortgage foreclosure action and their average monthly budget. Prior to filing, debtors' attorney did not have debtors update their financial information.

Debtors' Schedule I estimated Garth's monthly gross income at $8,000.00 and his monthly net income at $7,250.00, with no income for Becky. Based on these amounts, Garth earned $96,000.00 gross income and $87,000.00 net income in 2000. The monthly take home pay disclosed by debtors did not include Garth's bonuses. For 1999 and 2000, Garth's bonuses averaged approximately $150,000.00.

Debtors' statement of financial affairs listed Garth's income for 1998, 1999 and 2000 as $140,000.00, $290,749.00 and $177,000.00, respectively. The statement of financial affairs did not list any income for Becky. Debtors' statement of financial affairs further reflected gambling losses of $60,000.00 for 2000.

Debtors' Schedule J listed total monthly expenses of $9,200.00, including a mortgage payment of $4,850.00 and property taxes of $1,000.00. Debtors ceased making mortgage payments in July 1999 and did not pay the 1998 or 1999 property taxes. Debtors have not made payments on the debt owed creditors since January 1999. Debtors' Schedule J did not list any amount for entertainment expenses.

## II.    Debtors' Amended Filing

After the creditors' meeting commenced, debtors filed amended schedules and statement of financial affairs. The amendments included new income information and additional disclosures of assets. Specifically, the amendments disclosed income in 1999 and 2000 of $290,749.00 and $274,412.00 for Garth and $15,839.00 and $26,664.73 for Becky. Amended Schedule A included three additional parcels of real estate valued at $900.00. Amended Schedule B added a big screen

television, two other television sets, a stereo system, one fur, a wedding ring set, a necklace and a bracelet valued at $400.00.

## III.    Bankruptcy Rule 2004 Examination

At his Bankruptcy Rule 2004 examination, Garth testified his gambling losses for 2000 were closer to $200,000.00 rather than the $60,000.00 disclosed in his original bankruptcy filing. According to Garth, he gambled on: (1) casino games; (2) off-track betting; and (3) sporting events. Garth produced receipts showing $43,000.00 in casino bets. Garth thereafter produced betting tickets for 1999 and 2000 showing losses of $20,131.00 and $41,691.00 for off-track betting. Garth took the Fifth Amendment as to any inquiry on his sporting events bets. Garth claims he bet as much as $20,000.00 per day on sporting events.

## IV.    Evidentiary Hearing

Debtors testified that they did not read the original or amended filings before they signed them. The documents provided to debtors' attorney in anticipation of filing revealed that debtors owned two fur jackets, rather than just the one listed in Schedule B as amended. Becky testified that they amended the schedules relating to their additional income and real estate at the request of the trustee. A. 207.

At the evidentiary hearing, debtors were unable to specify the amount they spent on entertainment and gambling. Becky testified that the line item for entertainment expenses in Schedule J was intentionally left blank because the amount varied from month to month. Debtors could not quantify the extent of Garth's gambling losses. Garth testified that the couple's entertainment expenses and gambling losses accounted for the difference between their income and expenses for 1999 through 2001.

# DISCUSSION

## I.     Standard of Review

The factual findings of the bankruptcy court are reviewed for clear error. *In re A-1 Paving and Contracting, Inc.,* 116 F.3d 242, 243 (7th Cir. 1997). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573 (1985). Mixed questions of law and fact as well as questions pertaining to the application of facts to the law are reviewed *de novo. In re Ebbler Furniture & Appliances, Inc.,* 804 F.2d 87, 88 (7th Cir. 1986).

## II.     Section 727(a)(4)(A) Discharge (Count I)

Creditors claim debtors' discharge should be denied pursuant to § 727(a)(4)(A). Section 727(a)(4)(A) provides that the court shall grant the debtor a discharge unless the debtor knowingly and fraudulently made a false oath in connection with the bankruptcy proceeding. 11 U.S.C. § 727(a)(4)(A). In order to prevail, creditors must establish by a preponderance of the evidence that: (1) debtors made a statement under oath; (2) the statement was false; (3) debtors knew the statement was false; (4) debtors made the statement with the intent to deceive; and (5) the statement related materially to the bankruptcy case. *In re Bailey,* 147 B.R. 157, 163 (N.D. Ill. 1992). Debtors claim the only element at issue is whether they filed their pleadings with an intent to deceive.

Debtors first argue the bankruptcy court erred in finding fraudulent intent because they corrected their errors in subsequent filings. However, subsequent voluntary disclosure does not relieve a debtor from the consequences of perjury. *Mazer v. United States,* 298 F.2d 579, 582 (7th Cir. 1962). More recently, the Seventh Circuit confirmed:

> [Debtors'] omissions from the initial list suggest that they meant to hide assets if they could get away with it. . . The operation of the bankruptcy system depends on honest reporting. If debtors could omit assets at will, with the only penalty that they had to file an amended claim once caught, cheating would be altogether too attractive.

*Payne v. Woods*, 775 F.2d 202, 205 (7th Cir. 1985). Indeed,

> Section 727(a)(4)(A) does not provide for a grace period within which one can undo a false statement, made under penalty of perjury, but later declaring the truth. Nor is there any authority for the proposition that the amendment of a false statement requires the Court to pretend that the statement originally made was true.

*Bailey*, 147 B.R. at 165. Based on the law of this circuit, debtors' subsequent disclosures did not eliminate the consequences of filing a false statement.

The primary case cited by debtors does not change this result. *See* Brief at 8-9 and Reply at 3-4, *citing In re Brown*, 108 F.3d 1290, 1295 (10th Cir. 1997). In *Brown*, the court found the debtor's *voluntary* correction relieved him of the consequences of his original false statement. *Id.* Here, debtors only amended their original filing after receiving notice of creditors' fraud claim. Creditors filed two motions for extension of time based on the continuation of the creditors' meeting before debtors filed their amended schedules. Each time, creditors claimed possible fraud. Moreover, Becky testified that debtors amended their original filing to include their additional income and real estate at the request of the trustee. A. 207. Debtors did not amend their petition to include their additional expenses because the trustee did not request it. *Id.* Based on this record, debtors' omissions from both their initial and amended filings suggest that they were less than forthcoming in disclosing their assets and liabilities. *See Payne*, 775 F.2d at 205.

Debtors next argue that the bankruptcy court erred in finding fraudulent intent because they relied on the advice of counsel. To rely on this defense, debtors must show they acted on counsel's advice in good faith after presenting all relevant facts to counsel. *In re Breitling*, 133 F. 146, 149 (7th Cir. 1904). Debtors did not present any evidence that their attorney advised them to exclude the income, real estate and personal property that did not appear in their original filing. Without this evidence, debtors are bound by their declaration made under penalty of perjury that they have read the documents submitted to the court, and to the best of their knowledge, the documents were true

and correct. *In re Fawell*, Case No. 98 B 01274, 1999 WL 569449, at *14 (Bankr. N.D. Ill. July 26, 1999).

Finally, debtors argue the bankruptcy court erred by failing to properly weigh the evidence regarding fraudulent intent. The bankruptcy court's decision may be reversed only if this court is "left with the definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573. Contrary to debtors' position, the bankruptcy court's finding of fraudulent intent is supported by a preponderance of the evidence.

Under § 727, the court may find fraudulent intent where the debtors knowingly intended to defraud or engaged in behavior which displayed a reckless disregard for the truth. *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). Debtors testified that they did not read the original or amended filings before they signed them. Debtors' failure to read their submissions to the bankruptcy court before signing demonstrates the recklessness necessary to support a finding of fraudulent intent. *See In re Yonikus*, 974 F.3d 901, 905 (7th Cir. 1992)(debtors' reckless and cavalier disregard for the truth supports finding of fraudulent intent).

In addition, debtors' course of conduct supports the bankruptcy court's finding of fraudulent intent. *See Yonikus*, 974 F.2d at 905 (7th Cir. 1992)(finding of fraudulent intent may be based on inferences drawn from a course of conduct). In their original filing, debtors understated their assets by under-reporting their income and failing to disclose real and personal property. Although debtors subsequently amended their filing to include these assets, their amended pleadings failed to reflect significant entertainment and gambling expenses. Although debtors claim their failure to disclose these liabilities did not "work a fraud on anyone," debtors do not challenge the bankruptcy court's finding that the omissions were material. *See* Reply at 6. Indeed, materiality does not require a showing that creditors were prejudiced by the false statement. *In re Chalik*, 748 F.2d 618 (11th Cir. 1984); *Farmers Cooperative Ass'n v. Stunk*, 671 F.2d 391, 396 (10th Cir. 1983); *United States v. O'Donnell*, 539 F.2d 1233, 1237-38 (9th Cir. 1976); *In re Robinson*, 506 F.2d 1184, 1188 (2nd Cir.

1974). Debtors' continued failure to accurately disclose their liabilities supports a finding of fraudulent intent. Therefore, the judgment of the bankruptcy court on Count I of creditors' complaint must be affirmed.

## III.    Section 727(a)(5) Discharge (Count II)

Creditors claim debtors' discharge should be denied pursuant to § 727(a)(5). Section 727(a)(5) provides that the court shall grant the debtor a discharge unless the debtor fails to adequately explain the loss or deficiency of assets. 11 U.S.C. § 727(a)(5). Under 727(a)(5), a bankruptcy court has "broad power to decline to grant a discharge . . . where the debtor does not adequately explain a shortage, loss, or disappearance of assets." *In re D'Agnese*, 86 F.3d 732, 734 (7th Cir. 1996), *quoting In re Martin*, 698 F.2d 883, 886 (7th Cir. 1983). In reviewing a bankruptcy court's decision to deny discharge under 727(a)(5), neither an appellate court nor a district court can overturn the decision unless it is clearly erroneous. *Id.*

The bankruptcy court determined that the debtors' explanation for the loss of assets was unsatisfactory because their documentary evidence was incomplete and unorganized. Under 727(a)(5), a satisfactory explanation "must consist of more than . . . vague, indefinite, and uncorroborated hodgepodge of financial transactions." *Martin*, 698 F.2d at 886, *citing In re Baum*, 359 F.2d 881, 814 (7th Cir. 1966). According to debtors, Garth gambled away all money "not otherwise spent." Brief at 12. However, debtors presented receipts for only $90,000 for 1998 through 2000, while claiming losses in excess of $200,000 for only the year 2000. More importantly, debtors failed to provide sufficient evidence as to the "money not otherwise spent." Instead, debtors simply conclude that the "bank account records, organized by month, which disclosed every automatic teller transaction, check, deposit and withdrawal from their accounts" was sufficient to establish their entertainment expenses. Brief at 11. To the contrary, the court is not required to sift through debtors' financial records to determine the amount of money debtors spent on business and personal entertainment. *Albrechtsen v. Board of Regents*, 309 F.3d 433, (7th Cir.

2002), *quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)("'Judges are not like pigs, hunting for truffles buried in' the record"). While debtors were not required to provide a comprehensive accounting, vague and indefinite explanation of losses that are based on estimates, rather than verified through documentation, are unsatisfactory. Under these circumstances, the bankruptcy court's decision to deny discharge was not clearly erroneous.

## CONCLUSION

The judgment of the bankruptcy court is affirmed.

February 18, 2003

ENTER:

Suzanne B. Conlon
United States District Judge